[PHILADELPHIA, JANUARY 21st, 1837.]

## KAUFFMAN *against* KAUFFMAN and Others.

### IN ERROR.

1. On a motion in arrest of judgment, there cannot be a judgment entered for the *defendant.*

2. The declaration in an action on the case, brought by a widow against the executors of the will of her deceased husband, A., a devisee under the will, and B. a purchaser from the devisee, set forth that the testator devised to A. a certain tract of land, on condition that he should deliver to the plaintiff, during her life, six bushels of rye, two bushels of wheat, &c.; that certain disputes having arisen between the heirs, &c., the same were referred to certain persons, who made an award, directing certain payments to be made by A., and certain articles to be annually delivered by A. to the plaintiff: The declaration then averred, that A. had conveyed twenty-four acres, a part of the land, to B., on the consideration of his paying and performing the money and services owing, and to be performed by A., out of the said tract: The jury found, that when B. purchased the twenty-four acres, he agreed to take the same, subject to the money, articles and services mentioned in the will and award, and that in the deed to him by A., the articles enumerated in the award were omitted, by the mistake of the scrivener: *Held,* that the plaintiff was entitled to recover in this action ; judgment to be entered, so as to bind the twenty-four acres of land only.

THIS was a writ of error to the Court of Common Pleas of the County of Northampton.

In the court below, Elizabeth Kauffman brought an action on the case against "John Kauffman and John Kauffman the younger, executors of the last will of Jacob Kauffman, deceased; Jacob Kauffman, devisee of the said deceased, and Samuel Jacoby, tenant of the lands and tenements whereof the said deceased died seised, and which he devised to Jacob Kauffman." The process was returned " *nihil,*" as to Jacob Kauffman the devisee.

The declaration, which was in *assumpsit,* set forth that " Whereas the said Jacob Kauffman, now deceased, to wit: on the 5th day of April, in the year of our Lord one thousand eight hundred and fifteen, at the county aforesaid, made his last will and testament in writing, and executed the same in due form of law, and did thereby, amongst other things, give and devise to his wife Elizabeth, a certain tract of thirty-six acres, situated in Lower Saucon township, with a dwelling-house and stable, and certain other improvements to be erected thereon by his executors, to be occu-

(Kauffman *v.* Kauffman.)

pied and enjoyed by her during her natural life, and directed his executors to place at interest the sum of £200, and pay the interest thence arising, to his said wife, in half yearly payments, the first to be made in six months after his, the testator's decease; and he thereby also devised to his son, John Kauffman, a certain tract of seventy-eight acres of land, situated in Lower Saucon township aforesaid; and directed, among other things, that he should deliver thereout, unto the said Elizabeth, annually, during her natural life, six bushels of rye, two bushels of wheat, three bushels of buckwheat, and four bushels of Indian corn, all in good and merchantable grain, and fifty pounds of good fat pork. And he also devised to his son, Jacob Kauffman, the plantation on which the testator then lived, containing one hundred and six acres, under, among other, the following conditions: that he, the said Jacob should deliver unto the said Elizabeth, annually, during her natural life, six bushels of rye, two bushels of wheat, three bushels of buckwheat, and four bushels of Indian corn, all in good merchantable grain, and fifty pounds of good fat pork.

And whereas afterwards, and after the death of the said Jacob Kauffman; and before the probate of the said last will and testament; to wit: on the second day of May, in the year last aforesaid, certain disputes having arisen among the heirs and devisees of the said Jacob Kauffman, deceased, the same were by the consent and agreement of the said John Kauffman, one of the executors, named in the said last will and testament, and guardian of the minor children of the said Jacob Kauffman, deceased, of the said John Kauffman, the younger, the other executor, and one of the devisees therein named, of Christian Gernet intermarried with Elizabeth, one of the daughters of the said Jacob Kauffman, deceased, and of Jacob Kauffman; being all the persons interested in the said estate, submitted to Matthias Riegel by the name of Matthew Riegel, Christian Roth and Philip Bahl, who were to view the premises and make report to the said parties of their opinion on the aforesaid premises. And the said Matthias Riegel, Christian Roth and Philip Bahl, did thereupon afterwards, to wit: on the fifth day of May, in the year last aforesaid, at the county aforesaid, make their report in writing, and publish their award by and between the said parties amongst other things in manner following, that is to say—' First, we do report and award, that John Kauffman and Jacob Kauffman, the devisees in the said last will and testament mentioned, shall at their joint costs and charges, purchase, procure and deliver, unto their mother, the widow, to her only absolute use and disposal, one good milch cow, one complete bed and bedstead, with all appurtenances, one iron ten plated stove complete, and sufficient pipe, one table, two chairs, one iron pot, one frying pan, and other kitchen furniture as she may be in need of. And in case the said Elizabeth, their mother, should be taken sick, or otherwise become helpless during her widowhood,

(Kauffman v. Kauffman.)

the said John Kauffman and Jacob Kauffman, shall at their joint costs and charges find and provide a sufficient nurse for her.  Further the said John Kauffman and Jacob Kauffman, shall at their own joint costs and charges, dig and wall up a well with a pump fixed therein, if the depth of the well will admit thereof, on the lot of land devised to the said Elizabeth, by the said Jacob Kauffman, during her lifetime, as near the house to be erected thereon as can conveniently be done.  And further the said John Kauffman and Jacob Kauffman, shall jointly, yearly and every year, during the widowhood of the said Elizabeth, their mother, cut and haul to her house from off the premises devised to her, six cords of firewood; shall further deliver to her annually, one barrel of cider, provided any apples grow on the premises devised to them, and shall allow unto her so many apples as she may want.  And each of them, the said John Kauffman and Jacob Kauffman, shall annually deliver unto the said Elizabeth, their mother, three bushels of good rye, two bushels of wheat, three bushels of buckwheat, and four bushels of Indian corn, over and above the quantity saddled by the last will and testament of the said Jacob Kauffman, on the estate devised to them by the said testator.  And each of them, the said John Kauffman and Jacob Kauffman, shall annually in half yearly payments, pay unto the said Elizabeth, their mother, over and above the twelve pounds saddled on the estates devised to them respectively, the sum of six pounds, that is, John Kauffman six months after the decease of the said Jacob Kauffman, the sum of three pounds, and at the end of one year after the decease of Jacob Kauffman, the sum of three pounds money aforesaid.  And Jacob Kauffman, six months after the decease of the said Jacob Kauffman, the sum of three pounds, and at the end of one year after the decease of Jacob Kauffman, deceased, the sum of three pounds money aforesaid.  And further, each of them shall annually deliver into the stable, on the premises devised to her, one ton of well cured hay'—Which said award was afterwards to wit: on the same day and year aforesaid, at the county aforesaid, made known to and read to the parties thereto aforesaid, and assented and agreed to by them respectively.

And thereupon afterwards, to wit: on the ninth day of May, in the year of our Lord last aforesaid, at the county aforesaid, the said last will and testament of the said Jacob Kauffman, deceased, was duly proved before the register for the probate of wills, &c, in and for the county of Northampton, and letters testamentary thereon issued to the said John Kauffman, and John Kauffman, jr. the executor therein named, who took upon themselves the burthen of the execution thereof.  And the said submission and award, and the assent of the parties thereto having been duly acknowledged according to law before Joseph Horsfield, Esquire, one of the justices of the peace in and for the county of Northampton, aforesaid, was thereupon; to wit: on the said ninth day of May, in the year last afore-

said, at the county aforesaid, recorded in the office for recording of deeds, in and for the said county of Northampton, in deed book A, volume 4, page 303, &c. as in and by the said record relation being thereunto had will more fully and at large appear.

And whereas afterwards, to wit: on the twenty-ninth day of November, in the year of our Lord one thousand eight hundred and twenty-nine, the said Jacob Kauffman sold and conveyed ninety-one acres, parcel of the said premises so as aforesaid devised to him by the said last will and testament of the said Jacob Kauffman, deceased, unto one Charles Krämer, and to his heirs and assigns; and it was thereupon understood and agreed by and between the said parties, and the said Charles Kramer then and there undertook and agreed, and then and there faithfully promised the said Elizabeth, that the said premises so then and there conveyed to him should be liable for as well the said sum of money, duties and services charged upon and made payable, and to be rendered and performed out of the whole of the said premises so as aforesaid devised to the said Elizabeth, as well by the said last will and testament as by the said award; and that he the said Charles, his heirs and assigns, holding and occupying the, said premises, would well and truly render, pay and perform the same, in the same manner that he the said Jacob Kauffman, whilst owner of the whole of the said premises was liable to pay and perform, and had paid and performed the same.

And whereas afterwards, to wit: on the fourth day of December, in the year of our Lord one thousand eight hundred and twenty-nine, at the county aforesaid, the said Charles Kramer and Julian his wife, by their indenture did for the consideration therein mentioned, and for the further consideration of the paying and performing by the said Samuel Jacoby, of the said several sums of money, services and duties, so as aforesaid due, owing and to be performed and paid by the said Jacob Kauffman, out of the whole of the said premises; and by the agreement of the said Charles as aforesaid, by the said Charles, his heirs and assigns, out of the said tract of ninety-one acres so as aforesaid conveyed to the said Charles; did grant and convey to the said Samuel Jacoby, his heirs and assigns, a certain tract of twenty-four acres and forty-eight perches, parcel of the said tract so as aforesaid devised to the said Jacob Kauffman, as aforesaid. In consideration whereof the said Samuel Jacoby undertook, and then and there faithfully promised the said Elizabeth Kauffman, to pay and deliver and to perform and render to her the said Elizabeth, all and singular the sums of money, articles, things, services and duties, which were to be paid, done and performed, out of the whole of the said premises, so as aforesaid devised to the said Jacob Kauffman to the said Elizabeth, as well by and according to the terms of the said last will and testament as by the said award. And that he the said Samuel Jacoby, his heirs and assigns, holding

(Kauffman *v.* Kauffman.)

and occupying the said premises, would well and truly pay and perform the same in the same manner that he the said Jacob Kauffman whilst owner of the whole of the said premises was liable to pay and perform, and had paid and performed the same.

And the said Elizabeth further in fact says, that the said Jacob Kauffman, the devisee, during all the time in which he held the said premises, to wit, from the decease of the said testator until the twenty-seventh day of November, in the year of our Lord one thousand eight hundred and twenty-nine, when he, so as aforesaid, sold and conveyed to the aforesaid Charles Kramer, did yearly and every year, pay to the said Elizabeth, in half-yearly payments, the sum of sixteen dollars, the interest of a moiety of the said sum of two hundred pounds by the said last will and testament set apart for the use of the said Elizabeth, and did also deliver to her, the said Elizabeth, annually, during all the time last aforesaid, six bushels of rye, two bushels of wheat, three bushels of buckwheat, four bushels of Indian corn, in good and merchantable grain, and fifty pounds of fat pork, pursuant to the directions of the said last will and testament; and did also, during all the time last aforesaid, deliver to her, the said Elizabeth, three cords of fire-wood, half a barrel of cider, and allowed to her, the said Elizabeth, as many apples as she wanted; and did deliver to her, the said Elizabeth, yearly and every year, three bushels of good rye, two bushels of wheat, three bushels of buckwheat, and four bushels of Indian corn, over and above the quantity settled by the said last will- and testament on the estate devised to him by the said testator, and did also pay annually in half-yearly payments to the said Elizabeth, the further sum of three pounds, over and above the said sum of six pounds settled on the said estate so devised to him, the said Jacob, by the said last will and testament; and did also annually deliver to her, the said Elizabeth, at the stable, on the premises so devised to her, the said Elizabeth, one ton of well cured hay, pursuant to the directions of the hereinbefore recited award.

Nevertheless, neither the said John Kauffman and John Kauffman, the younger, the executors, nor the said Jacob Kauffman, the devisee, nor the said Samuel Jacoby, the tenant, as aforesaid, nor hath any or either of them, or any other person, from the said 27th day of November, in the year of our Lord one thousand eight hundred and twenty-nine, until the day of the bringing of this suit, paid, rendered or delivered unto the said Elizabeth, the said sums of money or any of them, or the said articles, things, duties and services, or any them so directed to be paid, done, rendered, performed and delivered out of the said premises, so, as aforesaid, devised to the said Jacob Kauffman, as well by the said last will and testament as by the said award, although thereto repeatedly requested. But they, the said John Kauffman and John Kauffman, the younger, the executors, the said Jacob Kauffman, the devisee, and the said Samuel

(Kauffman *v.* Kauffman.)

Jacoby, the tenant, have heretofore and during all the time last aforesaid, refused to pay, deliver and perform the same, and still do refuse to the damage of the said Elizabeth, one thousand dollars; and therefore she brings suit, &c."

The defendants pleaded *non assumpserunt;* and issue being joined, the cause came on for trial before Judge MALLERY on the 27th of January 1836, when the plaintiff gave in evidence the will of John Kauffman, deceased, the articles of agreement and award, and the deeds of conveyance and award mentioned in the declaration; and also gave parol evidence as to what took place at the time of the sales and execution of the deeds. The defendants also gave parol evidence in relation to the same matter. The Judge charged the jury, that the plaintiff could not recover unless it had been expressly agreed, that the defendant, Jacoby, took the premises subject to the matters specified in the award; and unless the reservation was omitted to be inserted in the deed of conveyance by the mistake of the scrivener.

The jury found " that at the time when Samuel Jacoby purchased the 24 acres 48 perches of land mentioned in the declaration, he agreed to take the same subject to the sums of money, articles and services, enumerated as well in the last will and testament of Jacob Kauffman, deceased, as in the award of the arbitrators, mentioned in the plaintiff's declaration, to be paid, rendered, done and performed, by Jacob Kauffman, the devisee therein named; and that in the deed executed by Charles Kramer and wife to Samuel Jacoby, the articles enumerated in the said award, were omitted to be enumerated and reserved by the mistake of the scrivener. If, under these facts, the Court shall be of opinion that the plaintiff is entitled to recover, then the jury find for the plaintiff, $142 28 to be levied of the said tract of 24 acres 48 perches of land so conveyed to him, the said Samuel Jacoby, as mentioned in the plaintiff's declaration, together with costs of suit."

The defendant's counsel moved for a new trial, and in arrest of judgment, and filed several reasons. After argument, the Court, on the 22d of August, 1836, discharged the motion for a new trial, and ordered judgment to be entered for the defendants. Judge BANKS, (who succeeded Judge MALLERY, as President of the Courts of Common Pleas of that district,) delivered the judgment of the Court as follows:

" It would appear from the declaration, that the suit was brought to recover the money and articles to which the plaintiff was entitled by the will, as well as the money and services and articles she was entitled to from Jacob under the award. It is now stated, that the recovery was had only for the money and articles the plaintiff was entitled to under the award. The calculation which was sent

out with the jury, has been shown us, from which it would appear that this was so.

Many reasons have been urged for a new trial, and as many in arrest of judgment. We will not notice them all, as the individual who delivers this opinion, was not on the bench when the trial was had. His opinion will be formed chiefly from an examination of the record. The suit is brought against all the defendants, as if this claim was a charge on the land mentioned in the declaration.

The claim now made, does not arise out of the will of the testator, but out of the award. By the terms of the award, the money, services, &c. are not made a charge upon the land; neither are they made a charge by the terms of their agreement to abide by the award; nor is it laid in the declaration, that they were a charge upon the land, by virtue of the award or of the agreement; nor is it found to be the fact by the verdict.

By the award, John and Jacob are to procure and deliver the articles, &c. at their joint costs and charges in part, and each to perform certain things, and deliver certain articles individually, and each to pay a certain sum of money. There is nothing in this award, that would make these things a charge upon the land.

There is in the agreement, a stipulation that the parties fully agree to the award, and it then proceeds, " we do hereby covenant, grant and agree for ourselves, our heirs, executors and administrators, that we will abide by the same, and faithfully fulfil the same in all and every its various parts, to the full intent and meaning thereof."

This agreement does not make the matters mentioned in the award, a charge upon the land; nor is it very easy to see how the executors can be made parties to this suit. It does not arise out of the will. The claim is not founded on the will. This agreement is individually for *themselves* and *their executors,* &c. and *heirs.* Each one binds himself; and the executors do not bind the estate of their testator for the performance of this award, nor do we know that they could do so. The claim may afterwards have been made a charge on the land by Jacob Kauffman, Kramer, and Jacoby, but that would not entitle the plaintiff to judgment in this case. If that were so, the executors would not be in any way chargeable, nor would the estate of their testator be in any manner subject to the payment of the sum now claimed. Nor is the estate of old Jacob Kauffman at all liable to the payment of the money, or for the performance of the matters contained in this award. This claim so far as regards the executors of Jacob Kauffman, deceased, is not a charge upon the land either by the will of their testator, by law or by agreement. How then can judgment be entered in this case for the plaintiff.

The case of *Pidcock* v. *Bye,* is cited as an authority; but that case is unlike this. There the sum claimed was a charge upon the land

by express act of assembly, and the defendant had agreed to pay it. It is also urged upon us, that by this case it is decided that if a plaintiff has a cause of action, he may recover it in any form of suit. We do not think that any such principle is established by that case. In actions of this kind, the plaintiff must have a good cause of action against the persons sued, or he cannot get judgment against them. There must be legal parties to the suit; and unless the action lies against all the defendants, the plaintiff cannot recover. It was not necessary to join the executors in this case. The cause was not to be reached through them, nor could it be reached through them for this claim. We think that the action cannot be maintained in its present form, and that on the facts found by the jury, the plaintiff is not entitled to judgment.

The Court therefore enter judgment for the defendants."

The plaintiff sued out this writ of error, and assigned the following errors:—

" 1. That on a motion in arrest of judgment, the Court could not enter a judgment for the defendant, but could only arrest the judgment.

2. That there was no sufficient cause shown, for arresting the judgment, or entering a judgment for the defendants.

3. The Court ought to have rendered judgment for the plaintiff, on the verdict of the jury."

Mr. *Porter*, for the plaintiff in error:—

1. The Court ought not to have entered judgment for the defendant, on the motion in arrest of judgment. The effect of this would be to debar the plaintiff from another suit, which ought not to be the case, when judgment is arrested.

2. The jury have found that Jacoby took the land subject to the lien. We did not ask to charge his person, but the land. It may be that the award was not a lien *per se*, though it was recorded; but if the parties agreed to take subject to it, it became a lien. In point of fact, the plaintiff was a party to the submission. It is true, that in *Bower* v. *Oyster*, (3 *Penn. Rep.* 239,) it was held that there cannot be a valid parol mortgage; but the case of *Rickert* v. *Madeira*, (1 *Rawle*, 327,) shows that that doctrine is to be taken with some allowance. In *Long* v. *Long*, (1 *Watts*, 268,) Judge Kennedy says, " whether a lien can in any case be created by a parol contract upon real estate, is a question as I conceive, not altogether necessary to be decided here." It is sufficient, if there was a contract between the parties, that the property should be taken subject to the lien. *Fickes* v. *Ersick*, (2 *Rawle*, 166.) *Ripple* v. *Ripple*, (1 *Rawle*, 386.) *Stackpole* v. *Glassford*, (16 *Serg. & Rawle*, 163.)

(Kauffman *v.* Kauffman.)

3. It is settled, that in an action to recover a legacy charged on land, the executor of the testator and the devisee and terretenants ought to be made defendants. *Brown* v. *Furer*, (4 *Serg. & Rawle*, 213). *Gause* v. *Wiley*, (*Id.* 523.) 1 *Chitty's Pleadings*, 497. The declaration in this case was framed upon the model of that in the case of *Patton* v. *McCauley*, referred to in *Brown* v. *Furer*. In chancery, the same persons would be made parties. *Blake's Chan.* 59. 2 *Madd. Chan.* 180. Are not all persons interested brought in here? The case of *Rees* v. *Moore*, (13 *Serg. & Rawle*, 436), relied upon on the other side, seems to have been overruled in *Pidcock* v. *Bye*, (3 *Rawle*, 183.) As to the liability of the executors, as such, *Macbeath* v. *Haldiman*, (1 *Term Rep.* 172.) *Onwhyn* v. *Wolsey*, (*Id.* 672.) *Hodgdon* v. *Dexter*, (1 *Cranch*, 345.) 4 *Am. Law Journal*, 129, &c. The only remedy in this case, under our peculiar law, was by *assumpsit*. *Debt* would not lie. The deed to Jacoby must be taken to have been reformed by the parol evidence.

Mr. *Hepburn* for the defendant in error. The law is settled that a terretenant is liable by reason of his possession alone. The declaration avers that Jacoby was liable by reason of the award alone, which never was a lien. The recording of it did not give it greater validity or effect. The parol evidence was offered to establish a lien which the case of *Bowers* v. *Oyster* shows cannot exist. *Rees* v. *Moore*, (13 *Serg. & Rawle*, 436,) shows the impropriety of joining the executors. Where the charge was not created by the testator, they cannot be made liable.

The opinion of the Court was delivered by

Huston, J.—It is admitted that nothing was said in the court below on the subject of the judgment in favour of the defendant; and it is agreed, that on a motion in arrest of judgment, there cannot be a judgment entered for the defendant: this would preclude the plaintiff from another suit. It is true, that, generally, on a special verdict, there is a judgment for one party or the other; but in this case, and generally where the cause goes off on a motion in arrest of judgment, or for reasons depending on a mistake in declaration, or in the form of action, the judgment is only arrested; and the plaintiff may bring another action.

The different courts in England, from whence this state came as a colony, have distributed the administration of justice among them in such manner, that certain claims have been, for a long time, made in a court of chancery; and certain portions of them were, at one time, in the Ecclesiastical Court, and then, for a period, in the courts of common law, which last courts assumed jurisdiction to compel the payment of legacies, while the ecclesiastical courts were suspended under the commonwealth. Soon after the

(Kauffman *v.* Kauffman.)

restoration of the monarchy, the chancery became the more usual tribunal, and has, at length, superseded the jurisdiction of the common law courts as to legacies charged on land, except, perhaps, in cases of express promise to pay, in consequence of some consideration.

We have neither ecclesiastical courts nor a court of chancery; and it could not have been tolerated, that so large a class of claims as legacies were ever irrecoverable in this colony or state. As our decisions, in former times, were not reported, we must speak with some doubt as to the mode, but certainly legacies were recovered in this colony long before the act of 1772, for the more easy recovery of legacies. The forms of declarations are in the manuscript book of forms of Tench Francis, Attorney General, more than twenty years before 1772. The act of 1772 enables the person, to whom any legacy, or bequest of any sum of money, or other goods or chattels has been made, to recover from the executors or administrators, with the will annexed, if there are sufficient assets, by action on the case, debt, detinue, or account-render, as the case may require, &c.

This did not in terms embrace the case of a legacy charged on the land devised to some particular person, subject to such legacy; for executors, unless there was a deficiency of assets to pay debts, could not touch lands so devised. In such cases, it was at one time the practice to bring ejectment against the devisee of the land so charged, and recover and deliver the possession to the devisee, until the legacy was paid by perception of rents and profits. This was as far from any thing known to the practice of courts of common law in England, as it was unsatisfactory, in most cases, to both legatee and devisee. Lands, of which only a small part was in cultivation, would not, by rents and profits, pay a few hundred dollars in a long time. The devisee was put out of possession—the legatee could not raise his money by a sale—and the remedy required to be reconsidered, and, if possible, a better one was discovered.

The case of *Patton* v. *M'Cauley*, in 1782, occurred in Lancaster, while the late Judge DUNCAN was a student in the office of Mr. Yeates, afterwards Judge YEATES. And in 1807, the suit of *Brown* v. *Furer* was commenced, but not finally decided until 1818; (4 *Serg. & Rawle*, 213.) There the judgment was reversed, because it was personal against the defendants, and not as it should have been, a judgment to recover the money out of the land devised, subject to the payment of such legacy. In the same book, page 509, in *Gause* v. *Wiley*, this matter came again under the consideration of this Court, and the doctrine was again fully discussed at the bar and by the several judges, and again it was decided that the executors ought to be made parties; because, if there remained debts of the testator unpaid, and no other fund, they must first be satisfied, even out of land specifically

(Kauffman v. Kauffman.)

devised, before a legacy charged on such land; and further, that the judgment ought to be, to levy the legacy out of the land devised subject to the payment of it, and not general, against the defendants personally. From that time, debt for a legacy charged on land, has been generally brought as directed in those cases; but cases have occurred, when debt could not be brought according to the principles peculiar to that action. The will under consideration is an example. The testator devises to his widow a certain sum of money to be paid annually, but he also devises six bushels of rye, two bushels of wheat, three bushels of buckwheat and four bushels of Indian corn, and fifty pounds of "good fat pork." And such wills are very common in this state. Would debt lie for these several kinds of grain, and this pork? No. Are such devises not to be recovered in this state? If ejectment is brought, is the widow to hold a farm, producing much grain, and keep all to herself, or become tenant to the devisee for all above what is devised to her? But these quantities of grain she is to receive annually, as long as she lives; when in possession by a recovery in ejectment, she is soon paid for time past, and must then restore the possession. But default is made and she recovers possession again, and so on to the end of her life. Such a remedy would be ruinous to both parties, and satisfactory to neither. Again, this year wheat is two dollars per bushel, and other grain, at a proportionally high price; and suppose it is not paid to her, and she brings ejectment and recovers, and when in possession, wheat and other grain sell for half the present price, is she to take bushel for bushel, or as much wheat, &c., as would indemnify her for being compelled to purchase this year—and if so, how are the relative prices and proportions to be settled?

If there is a difference any where as to the obligatory force of judgments on land, depending on whether the debt was originally evidenced by writing under seal, or depending on *parol* proof, that difference don't exist here; a judgment creditor can levy on, and sell the lands of his debtor, without regard to what was the nature of his debt before it became a judgment; and this is also the case whether the form of action was covenant, or debt, or assumpsit, or case, or trespass: and I can see no reason why this court should not support against the executors and devisee, debt or case, or any other action suited to the facts of the case; and on suggesting in any one of these actions all the facts which constitute the claim a lien on a specific tract of land, and claiming a judgment to be levied on that land, recover in one form of action as well as in another. The same reasons which induced the court to sustain *debt* on a money legacy charged on land, will be found to exist and to apply, with at least equal force, to induce them to support *case* to recover a quantity of grain, or wood, or meat, or all of them, charged to be delivered annually to a devisee, by a person to whom a particular tract is given.

(Kauffman *v.* Kauffman.)

In the case of *Long* v. *Long*, (1 *Watts*, 269,) Judge KENNEDY has shown that debt against, what is called the pernor of the profits, was well known to the common law. Perhaps in modern times in England, such claims are now brought in chancery. We have no court of chancery: we have sustained actions at law, for which there was no precedent, to attain justice in a clear case, as *Lang* v. *Keppele*, &c. *Brown* v. *Furer*, has been cited; and in *Pidcock* v. *Bye*, (3 *Rawle*, 183,) before the Chief Justice at a Circuit Court, and before this court, on appeal, *assumpsit* was supported, and a special judgment to be levied on the lands agreed to be charged, was entered; possibly debt could have been sustained in that case, which was for a precise sum of money. But in this case debt would not lie for grain, meat, hay, and firewood; and perhaps it is in a special action, such as this, that a recovery must always be had, for non-delivery of such articles as are here sued for.

But it is said that this suit is for articles agreed on at a family settlement and consultation of friends, to be paid to the widow, beyond what is directed to be delivered to her by the will, and that if the plaintiff succeeds, it will be establishing a lien by parol, and that this cannot be done in Pennsylvania. It is better in the decision of causes, to try and decide the case before us: the jury have found that the defendant is in possession of the lands which are to be affected by this judgment, at the time when he purchased, expressly subject to the articles directed to be delivered to the widow by the will, and also subject to the payment and delivery to her of the articles specified in the award, and agreed to by the whole family; and that these latter were omitted to be inserted in the deed by the mistake of the scrivener. Now it may be that an innocent purchaser, for valuable consideration, actually paid before notice of this award and agreement, might hold this twenty-four acres discharged from this incumbrance, and yet that the land may be subject to it in the hands of Jacoby, who not only had notice of it, but actually agreed to pay and deliver the matters which are the subject of this suit. I say the law and the justice of the case might be different in the case of an innocent and *bona fide* purchaser. I do not pretend in this case to designate what facts or circumstances would produce such results.

This court is of opinion that under the finding of the jury in this case, and in this form of action, judgment ought to have been entered for the plaintiff; the sum found and costs to be levied of the said tract of twenty-four acres forty-eight perches of land so conveyed to him, as stated in the declaration. Beyond all question he got the land on paying a less sum in cash, on account of these matters charged on it, and which he agreed to pay: to refuse is unjust in him. The judgment will not affect any of the other defendants; because it is in truth, a judgment, not against any person, but against a specific tract of land. Several of the cases cited, prove that this may be done, and was done in England, in actions of debt against the terretenant or

(Kauffman *v.* Kauffman.)

pernor of profits. To change the forms of proceeding in actions at law, when applied to the purposes known and sanctioned, is one thing; to extend the forms of law, when we are exercising chancery powers, or when we are compelled to apply those forms to new cases, is a different thing. If it were worth while to make a careful examination, one could find that judgments conditional and uncertain as to the time when they were to take effect, and uncertain whether ever they were to take effect, were once known to the common-law. The action of *warrantia chartæ* could be brought and tried, and judgment obtained before the plaintiffs were injured, or even threatened with a suit. The judgment was not for a specified sum of money, nor for money at all; nor for any specific quantity of land, or particular parcel of land; but to recover from the defendant lands of equal value with those warranted to the plaintiff; and nothing could be done on this judgment until the plaintiff was evicted from the lands warranted to him by the defendant. There will be found more than one case, in which in a suit against several who sever in their pleas, a judgment will be had against one and not against the others; one instance is a suit by a creditor of a testator against two executors, who severally plead that each has administered all the assets which came to his hand, and the plaintiff replies to each that he has wasted the assets; the issues may be found one for the plaintiff, and the other executor may have a verdict. The alarm which is pretended when a conditional verdict is sustained, or a judgment given, which is to affect only the person or the property which ought to pay, does not disturb me. In a few years all the applications of the common law forms to new cases, from *Lang* v. *Keppele* to this time, have met the approbation of those learned in the law, and honest in principle; and perhaps no case called for the interference and assistance of the court more imperiously, than those very common provisions for widows, of grain, wood, meat, &c. charged on particular tracts.

Judgment reversed.