## Cardamone v. Cardamone.

*Husband and wife—Married women—Suit by wife against husband for damages for personal injuries—Marriage of plaintiff and defendant after suit brought—Act of March 27, 1913.*

1. Where a suit in trespass is begun by a woman against a man to recover damages for personal injuries caused by the man in the alleged negligent operation of an automobile, and subsequently the plaintiff and defendant are married, a judgment on a verdict for plaintiff in such suit recovered after marriage will be stayed and the proceedings suspended until the disability of the plaintiff shall be removed.

2. Such a suit cannot be maintained by the wife against her husband under the Act of March 27, 1913, P. L. 14, as an action relating to her property. Unliquidated damages are not property.

3. The provision against abatement by subsequent marriage of the parties in the Act of April 12, 1845, P. L. 386, does not apply.

Trespass for personal injuries. C. P. Jefferson Co., Aug. T., 1924, No. 259.

W. B. *Adams* and Charles *Corbet*, for plaintiff; J. C. *Long*, for defendant.

SMITH, P. J., 34th judicial district, specially presiding, Feb. 10, 1927.— The foundation of the present action was the alleged negligence of the defendant in the operation of an automobile of which he was both owner and operator at the time, resulting in an accident and alleged resulting injury to the plaintiff, occurring Dec. 1, 1923. The action was commenced by summons in trespass June 12, 1924, which was served upon the defendant June 23, 1924. Both parties were then unmarried, but became husband and wife July 9, 1924, commenced living together as such up to, and were at, the date of the present trial, in which the jury rendered a verdict in favor of the plaintiff for the sum of $705.

At the close of the plaintiff's evidence the attorney for defendant moved for compulsory non-suit; the fourth reason stated therefor being: "Plaintiff is the lawful wife of defendant and is now living and cohabiting with him, and, therefore, it follows as a legal proposition that a wife cannot maintain her action to judgment for an alleged tort, such as sued for in this case."

Which motion was refused, and, upon close of defendant's testimony, we were requested to charge the jury on points submitted by the defendant, Nos. 6 and 7:

Cardamone v. Cardamone.

"6. The plaintiff and defendant are husband and wife, and, therefore, the plaintiff cannot maintain this action to judgment.

"7. Under all the law and the evidence, your verdict must be for the defendant."

Both of which we refused.

After verdict, on motion, we granted rule for new trial and arrest of judgment; also rule for judgment for the defendant n. o. v.

The question of primary importance and not free from difficulty is that involved in the motion for judgment n. o. v., as based upon our refusal to affirm defendant's fifth and sixth requests to charge, as above quoted, and calls for a careful review and application of the law manumitting married women from the rigorous restrictions of the common law upon their rights, liabilities and responsibilities, in regard to which we have extended our investigation outside this State only so far as necessary.

The question is one of "first impression" in Pennsylvania jurisdiction, for here no decisions directly in point exist.

Those in all jurisdictions are uniform that at common law, owing to the identity of husband and wife, neither can, in the absence of statute, maintain a civil action for tort against the other; a rule that applies to both person and property: 30 Corpus Juris, 714, and section 317 and notes; recognized in Pennsylvania.

In Walker v. Reamy, 36 Pa. 410 (415), in commenting upon the Married Women's Act of April 11, 1848, P. L. 536, Lewis, C. J., says: "We are sure that there was no (legislative) intention to alter the nature of the family relation, and we are not so to administer the law as to change by inference and deduction that which is not expressly changed; quod contra rationem juris introductum est, non est producendem ad consequentia." The same view is stated in Ritter v. Ritter, 31 Pa. 396, where, per Woodward, J., page 398: "We are asked to deduce the legislative intention to confer a right of action from the provisions of our several acts of assembly, but it is a sufficient answer that no one of these acts expresses that intention. If the legislature meant that such actions as the present should be sustained, they had command of a copious language in which to express their will. They have not done it, and until they do we will not infer it." The entire opinion thus quoted in part, too long to incorporate in this, should, however, be read entire as logically in extenso supporting our final conclusion at bar.

In Small v. Small, 129 Pa. 366, followed in Kennedy v. Knight, 174 Pa. 408, holding, under the Married Woman's Property Act of June 3, 1887, P. L. 332, a married woman could not sue her husband directly in her own name for the recovery of money received by him from her separate estate, as the "single" question presented." Mr. Justice Mitchell stated his reasons (page 373) that such statute did not expressly so authorize, and he would not find such authority by inference from its provisions, saying: "To legislators versed in the principles of the common law it would immediately suggest itself as a distinct and momentous departure from the legal policy of centuries, which ordinary phraseology, however general, would not commonly be understood to intend, and it is inconceivable that, under such circumstances, it should be granted obscurely and by implication," quoting as above from Ritter v. Ritter, and concluding that the legislature thought the remedy provided by the Acts of April 11, 1856, P. L. 315, and June 11, 1879, P. L. 126, ample "without extending it to suits between parties living amicably together in the marital relation." And he notes the specific intention of the legislature in the enactment of the 1887 Act by the similarity of its phraseology (with certain except

tions), to the English Married Women's Property Act of 1882, which provided that "husband and wife shall have the same civil remedies upon contracts in their own name and rights against all persons, *including each other;*" and these italicized words were struck out by the Act of 1887, and it passed without them. "The inference from this action is irresistible that the legislature did not intend that actions between husband and wife, while living together, should be authorized;" and, at page 375: "So great a change in the policy of the law, upon a subject that may come home to every householder in the Commonwealth, should not rest on inference or implication from general words, but should appear by the explicit and unquestionable mandate of the legislature." And in Fennell's Estate, 207 Pa. 312, Mr. Justice Fell emphasizes the rule in Pennsylvania that the common law disability of a married woman remains "except as modified by statute."

We find the remedies of the Acts of 1856 and 1879, before cited, enlarged by the Act of March 27, 1913, P. L. 14, which provides: "Hereafter, a married woman may sue and be sued civilly in all respects and in any form of action and with the same effect and results and consequences as an unmarried person; but she may not sue her husband except in a proceeding for divorce or in a proceeding to protect and recover her separate property; nor may he sue her except in a proceeding for divorce or in a proceeding to protect or recover his separate property." In which we note the sweeping and conclusive language preceding the words "but she shall not sue her husband," and what follow is immediately, expressly and unequivocally limited and restricted, as to the rights of husband and wife to sue each other, to the specific purposes designated, viz., for "divorce" and protection and recovery of separate property of each respectively; and it must be by virtue of the language of this limitation the present suit can be maintained, if at all.

First, as to the term "property" in the act. Is the subject-matter of the present suit "property?" We are not without authority. In Miller *v.* Miller, 44 Pa. 170, it was held that "damages for permitting waste and destruction of real estate by the wife was not 'property' within the meaning of that term in the Act of April 11, 1856, providing a married woman may sue to protect her reputation, and to recover her separate earnings or property." The conclusion of the court below (Pearson, J.), such "unliquidated damages are not 'property,' either in common parlance or technical language," sustained demurrer to the action by wife against husband, which, in a three-line opinion, the Supreme Court (Strong, J.) affirmed, thus also approving the above quotation by the lower court from Ritter *v.* Ritter, already mentioned in this opinion, *inter alia,* saying: "The legislature has undertaken to enumerate the cases in which she may sue, and all others are omitted; *expressio unius exclusio est alterius* is a sound legal maxim."

Without reference to other definitions of "property," the above decision is sufficient for our determination that the subject-matter sued for in the instant case is also *unliquidated* damages and not *property* within the meaning of the Act of 1913; and were this an action actually commenced during the married relation of the parties while so living amicably together as husband and wife to recover damages for injury such as at bar accruing, either before or after marriage, it would appear obvious it could not be maintained, although possibly so after a divorce or final separation, of which Paskevitch *v.* Paskevitch, 5 Northumb. Co. Repr. 266, is an illustration, Cummings, J., however, saying: 'Even since the act (of 1913) we do not believe that a wife could maintain such . . . while they are living together."

Cardamone v. Cardamone.

In Smith v. Smith, 67 Pitts. L. J. 599, it was held on statutory demurrer that a wife who was injured while riding in her husband's automobile, by his losing control of his machine, cannot sue the latter for damages in trespass, as not being within either the Act of June 8, 1893, or as amended by that of March 27, 1913 (above), the opinion stating: "Actions between husband and wife were not authorized at common law and can be maintained only by virtue of a statute. She must by affirmative proof bring herself within one of the statutory exceptions; . . . the term property has been defined as an interest one can have in external things."

Mink v. Mink, 16 Pa. C. C. Reps. 189, decided under the Act of June 8, 1893, P. L. 344, a married woman, after separation, could not sue her husband for slander. In Gillan v. West, 232 Pa. 74, citing Small v. Small and Kennedy v. Knight as firmly establishing the principle that "a married woman cannot bring suit against her husband while they are living together." Even equity will not interfere to set aside this legal unity except where by its rank injury it becomes legal folly: Per Agnew, J., in Williams's Appeal, 47 Pa. 307-309.

Such statutory changes of the principles of the common law have been considered in other jurisdictions. In Peters v. Peters, 42 Iowa, 182, under a code provision that "a wife may prosecute and defend all actions at law or in equity for the preservation and protection of her rights and property as if unmarried," held that a suit for damages for assault and battery by her husband was not maintainable by the wife against him.

Thompson v. Thompson, 218 U. S. 611, facts as in the case last cited, and termed the "leading case" on the subject in 30 Corpus Juris, 704, note; an appeal from the Court of Appeals for District of Columbia under provisions "that married women shall have power . . . to sue separately for the recovery, security or protection of their property and for torts committed against them as fully and freely as if they were unmarried," held not to include right of wife to sue husband for such tort. The court said: "In overturning a statute, the courts are to have in mind the old law and the change intended to be effected by the passage of the new, . . . conceding it to be within the power of the legislature to make the alteration in the law if it saw fit to do so; nevertheless, such radical and far-reaching changes should only be brought by language so clear and plain as to be unmistakable evidence of the legislative intention. . . . Had it been the legislative purpose, . . . it would have been easy to have expressed that intent in terms of irresistible clearness. . . . We think the construction we have given the statute is in harmony with the language and is the only one consistent with the purpose." And from 67 Pitts L. J. 599 (cited above) we again quote: "The courts . . . generally agree that none of the enactments (in the several states) will give the wife the right to sue her husband for a personal tort by implication, but the right must be expressly conferred," citing from Strom v. Strom, 116 Am. S. R. 387 and other authorities.

We have thus considered at length and with some plurality of decisions the status of husband and wife to sue each other for tort occasioned either before or during the married relation and while living together as such, and the conclusion is inevitable that no such right exists under our statutes, and the prohibition remains as at common law, resting on the fiction of the oneness of person because of the marriage. The reasoning of the citations above are persuading as to the instant case, of which we do not find a parallel in the Pennsylvania authorities; but in Newton v. Weber, 196 N. Y. Supp. 113 22 Neg. & Com. Ca. 420, note, we find a decision on the same facts, and a motion to dismiss the action was allowed, and we deem it worth while to

quote at some length from the opinion: "It is urged that modern progress and thought have advanced so far as to render this fiction of law practically obsolete, and that it should be disregarded in this instance and a more reasonable and up-to-date view be taken, which will permit a woman, though married, to maintain any action against her spouse. I believe that to be an argument which should be addressed to the legislature," citing several cases, one being Longendyke v. Longendyke, 44 Barb. 366, being suit by wife against husband for damages resulting from his assault and battery on her. It would involve the parties "in perpetual controversy and litigation, to sow the seeds of perpetual domestic discord and broil, to produce the most discordant and conflicting interests of property between them and to offer a bounty or temptation to the wife to seek encroachment upon her husband's property, which would not only be at war with domestic peace, but deprive her probably of those testamentary dispositions by the husband in her favor which he would otherwise be likely to make."

From the case of Perlman v. Brooklyn City R. R. Co., 194 N. Y. Supp. 971: "Enjoying each other's society in an automobile pleasure ride suggests little in consonance with the wife's desire to transfer money from the pocket of her husband to her own pocket because his inadvertence has caused her a personal hurt."

Again, quoting from Edgcomb, J., in Newton v. Weber, cited above, after noting the sole isolation of the case after his careful search, he says: "It seems to me that the decision of this question largely depends upon the reasons of the rule prohibiting such actions. The canon in question was founded upon the legal fiction that there was an identity of the parties to the marriage contract and the husband and wife were one; hence, the party could not sue himself. The all-important feature of a lawsuit is, not its commencement. It avails a party little to commence the action unless he follows it to judgment; the principle here involved does not look to the relation of the parties when the cause of action accrued or when the case was commenced, but to their relation at the time their rights are judicially determined. If plaintiff's contention is correct and she is successful in establishing her claim of negligence on the part of the defendant and her freedom from contributory negligence, we would have the spectacle of one party recovering a judgment against himself, because the very moment plaintiff and defendant intermarried they became, in the eyes of the law, one person. The fact that the cause of action accrued and that the action was commenced when they were separate entities does not change the situation. . . . It does not necessarily follow that because the action was commenced at a time when there was no legal reason why it should not be continued to judgment, it cannot abate in the event of a change in the situation of the parties. . . . So the marriage of the plaintiff to the defendant after she had begun this action changed the situation and made her one and the same person as the defendant and took from her the right to maintain this action against her spouse."

Our attention has been called by the learned attorney for the plaintiff at bar to the case of Bushnell v. Bushnell (Conn.), 131 Atl. Repr. 432, as *contra* in principle, in which case the injury to wife, the action begun and trial had during the married relation; but, upon reading the opinion and its reference to prior decisions therein cited from the Connecticut Reports, essentially Matthewson v. Matthewson, 63 Atl. Repr. 285, and Brown v. Brown, 89 Atl. Repr. 889, we learn that its foundation is the Connecticut Statute of 1877.

The opinion in the Bushnell case relies upon the case of Brown v. Brown, and quotes from the opinion therein. After referring to the facts of the

Cardamone v. Cardamone.

latter as a "wilful tort," it holds (page 433) the language of the statute is broad enough to apply to the tort arising from the negligence of the husband then under consideration; and this is because, as we learn from the opinion in the Brown case, 89 Atl. Repr. 891, the Act of 1877 expressly changes the common law status entirely of husband and wife, and "in marriages which have occurred since the act took effect, the parties retain their legal identity and their civil rights are to be determined in accordance with the status thus established. . . . The statute leaves nothing to implication," which is invoked at bar. "Her legal identity was not lost by coverture."

In the opinion in the Matthewson case, 63 Atl. Repr. 285 (289), the various principles of this statute are analyzed, evidencing its more sweeping character than [the act] involved in Newton v. Weber, 196 N. Y. Supp. 113, cited above, and it sufficiently indicates a different rule, because of the "unity of legal identity and property in the husband has been replaced by the *equality* of each in legal identity and ownership of property" (per opinion, 63 Atl. Repr. 289). Hammersly, J., in the Matthewson case, above cited, opinion page 280, decides the Connecticut statute effects a "more radical" change in the legal status effected by force of the marriage; . . . more clearly involves a consequent change in the civil rights purely incidental to the status" than in other jurisdictions, and at page 289 terms it a "radical change in public policy" thus introduced. "The completeness of this change cannot be questioned."

Like as was said in the Matthewson case, above cited, here we can say: "The precise question before us has never been before passed upon" in Pennsylvania, as was Newton v. Weber, 196 N. Y. Supp. 113, appearing to be the first upon the facts in any jurisdiction, after diligent search by the deciding jurist, as stated in his opinion. For that reason, we have extended our elaboration possibly beyond reason, but with the purpose of fortifying our conclusions by all the reasoning available on so important a subject.

We interpret the depreciation by the court in Brown v. Brown, 89 Atl. Repr. 889, of the danger of domestic tranquility, as referring to the statutory provision then being interpreted, and not to a suit being maintained without statutory authority at bar, and we rather adopt the rule of public policy which should forbid, for that reason, this action as we have above quoted from the court in Newton v. Weber, 196 N. Y. Supp. 113; see, also, Morrison v. Morrison, 262 Pa. 192 (201). Our opinion in this regard is not qualified by what appears to be maintained by the parties to the present action—a congenial family relation—which renders the suit the more suspicious of a *concealed* purpose, of mutual profit to be accomplished through an *apparent* domestic discord; but further we will not surmise or speculate.

The term "sue," as used in the Pennsylvania Statute of 1887, is given the legal signification in Kuhlence v. Vocht, 4 Pa. C. C. Reps. 370, as defined by Webster: "To seek justice or right from; by legal process," and "broad enough to include final process." This applies to the same terms in the Acts of 1893 and 1913 we are now considering, and to all the stages of the present action from the time of issuing the summons to final verdict and judgment, and, of course, includes the very trial, the verdict in which we are now asked to set aside, which was being *sued* during the married relation of the parties, which we now conclude cannot be done.

We do not think the provisions against abatement by subsequent marriage of the parties, incorporated in the Act of April 12, 1845, P. L. 386, applies here; for in the last clause the husband of the very plaintiff suing "shall have the power to become a party thereto and prosecute the same to final judgment or decree;" and it impresses us that the act does not apply to suits

of husband and wife by and against each other, but by a *feme sole* against third parties, for we cannot conceive by what forms of practice or procedure the husband could be both plaintiff and defendant. Further, this conclusion is strengthened by the authority of 13 L. R. A. 1395-1396, that "the general rule of the decisions of such statutes merely changes the procedure, but gives no right and applies only to such cases of action as could be maintained by the husband and wife as co-plaintiffs before the statute took effect," observing that this Statute of 1845 antedated any Pennsylvania statute which, either expressly or inferentially, is or could be attempted to construe as authorizing the maintenance of the present suit.

It is with the greatest hesitation that we feel forced to thus differ with the conclusions appearing in the opinion in this case, filed April, 1926, by Hon. W. T. Darr, President Judge of this district, and because of which we, as trial judge, allowed the trial to proceed consistent with his opinion. We are now confronted with the responsibility of determining the question upon the present motions, doing so with, I trust, the modest concession that we may prove wrong and he right in the final analysis.

However, our decision will not leave the plaintiff entirely remediless. Her action, lawfully instituted, should not be struck down. In all such contingencies, statutes of limitations, as also presumptions and estoppel by lapse of time, do not ordinarily affect the rights of a wife, since she cannot be expected to treat her husband as a stranger. As certain courts have well said: "Any other policy would be apt to beget disagreements and contention in the family fatal to domestic peace:" Per Mr. Justice Moschzisker, in Morrish v. Morrish, 262 Pa. 192 (201).

We overrule the motion for judgment for defendant *n. o. v.* for the reason it would be a bar to plaintiff's action from its inception, and could not regularly be entered should arrest of judgment be ordered: Kauffman v. Kauffman, 2 Whar. 139 (147). But we are of the opinion that the marriage of the plaintiff and defendant to each other abated all proceedings in the action as of the date of the marriage, and no circumstances having since occurred to remove the disabilities of their coverture, the trial and verdict were unauthorized and judgment is arrested (Wanamaker v. Beamesderfer, 3 D. & C. 699), leaving unaffected all proceedings prior to the actual marriage of the parties, leaving open to the plaintiff the opportunity of further prosecution of them unaffected by the statute of limitations should the disabilities of coverture be hereafter removed, the character and nature of which it is not our province to now anticipate, except to note the provisions of the Statute of June 11, 1879, § 2, P. L. 126. The enabling features of section 3, Act of June 8, 1893, P. L. 345; Act of April 27, 1909, P. L. 182, and illustrative decisions cited (4 Vale Digest, col. 12059), quoting from one only opinion of Edwards, J., in Kennedy v. Knight, 174 Pa. 408, commencing at bottom of page 411: "On the authority of Small v. Small, *supra*, we consider the principle firmly established that a married woman cannot bring a suit against her husband while they are living together, and as there is no person in existence capable of suing or being sued, the statute of limitations does not begin to run until the right of action is complete," and applying this rule to an action in case stated to recover on a judgment promissory note given by husband to his wife, in which the plaintiff was her executor and the defendant the representative of the husband, also deceased, instituted more than six years after the due date of the note, but within the limitation period as computed from the date of the wife's death, the court held the statute did not apply, even although the note during

Cardamone v. Cardamone.

her lifetime was at all times in her possession, because of her coverture disability to sue her husband. Affirmed.

Therefore, consistent with the reasoning of this opinion and, as we believe, sustained by the principles of the authorities we have cited.

And now, to wit, Feb. 10, 1927, motions for new trial and judgment non obstante veredicto are overruled, trial and verdict set aside and judgment arrested; and it is further ordered that all proceedings in said suit remain in statu quo as they existed at the date of marriage between the parties plaintiff and defendant; further proceedings thereof stayed and suspended unless and until the disabilities of the plaintiff to further pursue the same, arising from her coverture, shall be removed. Exceptions noted and bill sealed for the plaintiff.                                    From Raymond E. Brown, Brookville, Pa.