S. S. Kennedy, Executor of Nancy Knight, deceased, v. Jeremiah D. Knight, Executor of the Last Will and Testament of Benjamin Knight, deceased, Appellant.

*Husband and wife—Married woman—Suit by wife against husband—Statute of limitations.*

The fact that a married woman has in her possession a judgment note against her husband with the right to issue an execution upon it with or without her husband's consent does not deprive her of the benefit of the exception contained in the statute of limitations.

Under the act of June 3, 1887, P. L. 333, a married woman cannot bring suit against her husband.

A wife received a judgment note from her husband in January, 1884, payable in one year. She did not enter judgment upon the note. In July, 1892, the husband died, and in September, 1892, the wife died. The executor of the wife's estate found the note among her papers. *Held,* (1) that a suit upon the note was not barred by the statute of limitations; (2) that the wife's executor was entitled to bring suit upon the note, and in the absence of a defense to have judgment thereon.

Argued Feb. 26, 1896. Appeal, No. 154, Jan. T., 1896, by defendant, from judgment of C. P. Lackawanna Co., January Term, 1895, in favor of plaintiff, on case stated. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Affirmed.

Case stated to determine whether a judgment note was barred by the statute of limitations.

The facts appear by the opinion of the court, EDWARDS, J., which was as follows:

The facts of this case are few and simple. On January 11, 1884, Benjamin Knight borrowed $1,000 from his wife, who had a separate estate, and on the same date he gave her a promissory note, containing a confession of judgment, payable one year after date, as security for the money. This note became due January 11, 1885. Benjamin Knight died January 22, 1892, and Nancy, his wife, died September 9, 1892. If the suit upon the note is barred by the statute of limitations, judgment is to be entered for the defendant; if it is not barred by the statute, judgment is to be entered for the plaintiff for the amount of the note with interest.

The solution of this question is not free from difficulty, and for this reason we propose to examine it at some length. The position of a married woman under the common law is well understood by the legal profession. Her rights and powers were very much circumscribed and she could scarcely be considered to have a legal existence separate from that of her husband. The unity of the persons of the husband and wife, under the common law, is the source of the disability which prevented her from maintaining a suit against her husband or against strangers, without the consent of her husband, and this disability is at the foundation of the exception in the statute of limitations protecting her from its operation.

But the rigid theory of legal unity based upon coverture had been destroyed to a considerable extent, by custom and judicial construction, previous to the act of 1848, securing the separate estates of married women. AGNEW, J., says that upon the plea of equity the courts set aside legal unity wherever, by its rank injury, it became legal folly. He gives several instances of departures from the common law rule. They may be found in Williams' Appeal, 47 Pa. 307.

The first legislative attack of any importance on the theory of legal unity is to be found in the act of 1848; but the exceptions in this act preserved many of the rigors of the common law rule. Nevertheless the passage of this act was an advance step in the emancipation of married women from the disabilities of coverture. From time to time, the legislature, by successive enactments, has enlarged the powers of married women over their separate estates, adding to their liabilities and responsibilities at the same time. The most sweeping change is to be found in the act of 1887. Under the provisions of this act a married woman acquires enlarged control over her separate estate; she can make contracts necessary to the enjoyment of her estate, as if she were unmarried, and she can sue and be sued without her husband joining or being joined. There are some things she cannot do. She cannot convey or mortgage her real estate without her husband joining; she cannot become accommodation indorser or surety for the debt of another, and she cannot bring a suit against her husband. While the act of 1893, P. L. 344, specifically enumerates the cases in which a married woman may sue her husband, the act of 1887 is silent on this question, and the reason we say that under the latter act she cannot sue her husband is because it is so decided in the case of Small v. Small, 129 Pa. 366. In the case at bar we are not concerned with the act of 1893. The construction given to the act of 1887 by the Supreme Court in Small v. Small, deserves our close attention. Section 4 of the act reads : " Husband and wife shall have the same civil remedies upon contracts in their own name and right, against all persons, for the protection and recovery of their separate property as unmarried persons." It was held in the court below that, on account of the general and unlimited language of this section, husband and wife could sue each other. But MITCHELL, J., says : " It (sec-

tion 4) makes no exception of actions against each other, and, taken by itself, its natural meaning is, perhaps, broad enough to include them without straining.  But no rule of judicial interpretation is wiser or better settled than that which prohibits the taking of a single sentence, even though it form a separate section of a statute, and construing it apart from the context, or without regard to the subject-matter, and the general purpose sought to be accomplished.  The present act gives notable warning of the danger of such a course.  Though not long, it is extremely intricate and confused, if not contradictory." After discussing, comparing and analyzing the several sections of the act, MITCHELL, J., proceeds : " It is impossible to suppose that so important a branch of the subject as the right of action between husband and wife should not have been thought of, or being thought of should not have been granted in unequivocal terms, if intended to be granted at all.  To legislators, versed in the principles of the common law, it would immediately suggest itself as a distinct and momentous departure from the legal policy of centuries, which ordinary phraseology, however general, would not commonly be understood to intend, and it is inconceivable, that under such circumstances, it should be granted obscurely and by implication. . . . This view is confirmed almost to a demonstration by the legislative history of the act of 1887.  The fourth section follows closely the English married woman's property act of 1882, and as originally introduced in the senate, it provided, as that act does, that 'husband and wife shall have the same civil remedies upon contracts in their own name and right against all persons, including each other,' etc.: Legislative Record, 1887, Pa. 896.  This specific provision which put the change in the previous law into that precise, definite, and unquestionable form which its importance demanded, was struck out, and the section passed without it. The inference from this section is irresistible, that the legislature did not intend that actions between husband and wife, while living together, should be authorized."

The act of 1893, which was passed to remove and correct the ambiguities and contradictions in the former act, puts the question beyond dispute.  A married woman cannot sue her husband except in the cases and circumstances provided in the act.

On the authority of Small v. Small, supra, we consider the

principle firmly established that a married woman cannot bring a suit against her husband while they are living together, and that as there is no person in existence capable of suing or being sued, the statute of limitations does not begin to run until the right of action is complete.

The instrument, which is the foundation of the action before us in the case stated, is a promissory note, containing a confession of judgment. If it were a simple promissory note, without a confession of judgment, our consideration of the case would end here, and there would not be the slightest difficulty in directing judgment to be entered in favor of the plaintiff. The wife received the note from her husband in January, 1884. It became due in January, 1885. She did nothing with the note one way or the other until six years had elapsed. The husband died in July, and the wife in September, 1892. Both died testate. The executor of the wife's estate found the note among her papers.

It is contended, on the part of the defendant, that the statute of limitations began to run in this case in January, 1885; that the husband had removed the disability arising from coverture by placing in his wife's hand a note with a confession of judgment; that she had the right and the power to enter this judgment note on record, and to issue execution thereon, without the husband's consent. The argument is that while a person is under a disability he is powerless to act; but that when this disability is removed either by law or by the act of the parties, and the legal right given him to do the act which he could not do before, he is bound to enforce his right in the same manner as if the disability never existed.

It is undoubtedly the law in Pennsylvania that a husband may confess judgment to his wife, for an honest claim, and that she may issue execution thereon and levy upon his personal or real estate. But this doctrine has been of slow growth and is an illustration of the gradual settlement of a principle by judicial construction.

In the case of Shade v. Shade, 5 Clark, 493, Judge PEARSON decides that a judgment confessed by a husband in favor of his wife without the intervention of a trustee, though void at law, is good in equity. A judgment so entered was a lien, although possibly an execution could not issue on it. This was in 1859.

We quote this decision of a common pleas court because it is cited with approval by WOODWARD, J., in a later case.

In 1864, Williams' Appeal, 47 Pa. 307, was decided. In this case, there are two opinions,—one clothed in burning language, hot with resentment at the fetters of the common law, the other calm and deliberate. AGNEW, J., says that a judgment given by a husband to his wife is good in law and equity, and is entitled to a share in the distribution of the proceeds of a sheriff's sale. WOODWARD, J., on the other hand, maintains that no execution could issue on such a judgment, that it was not a lien in law and was not entitled to a share in the distribution.

The question was more definitely settled in 1879. In Rose v. Latshaw et al., 90 Pa. 238, the doctrine is enunciated that a husband may confess a judgment to be entered against himself in favor of his wife, and execution may legally issue thereon. It will be observed in reading Mr. Justice TRUNKEY's opinion in this case that the proceedings were enforced with the implied consent of the husband, because he says: " Execution of a judgment, voluntarily suffered by the husband, is no more adversary than was the entry of the judgment. In one sense both are adversary; where either is with his consent it is not adverse in the sense which the laws forbids, for it does not disturb domestic relations."

In the same year, in Lahr's Appeal, 90 Pa. 507, the principle is reiterated that a judgment voluntarily given by a husband to secure a debt owing his wife, is just in law, and is entitled to its place in the distribution of the proceeds of a sheriff's sale.

But it was in 1888 that the Supreme Court affirmed, without qualification, the proposition that where judgment has been confessed by a husband directly to his wife, execution may issue thereon, at the instance of the wife, without the consent of the husband. This was done in the case of Kincade v. Cunningham, 22 W. N. C. 459.

The review of the authorities brings before us the law on this question as it is at the present time. The important inquiry now is: Does the fact that a married woman has in her possession a judgment note against her husband with the right to issue an execution upon it, with or without her husband's consent, deprive her of the benefit of the exception contained in the statute of limitations? We think not. It may be

that as to transactions between married women and third parties, the statute of limitations has been repealed by implication by the act of 1887, the statute, if the transaction was prior to said act, beginning to run at the date of the act; but as this question is not before us we are not called upon to decide it. In our opinion, a married woman, having her husband's promissory note, with or without a confession of judgment, has the right to rely upon the protection secured to her by the provisions of the statute of limitations.

It will be observed in reading the cases cited that every advance step made by our higher court, in the branch of the law we are now considering, was for the protection of the married woman. TRUNKEY, J., in Rose v. Latshaw, supra, says: "We have taken no account of the foreboded ills to follow a decision that a wife's execution on a judgment against her husband is not a nullity. The commonwealth is none the worse for the advanced legislation for security of married women in the ownership and enjoyment of their property, and will not be hurt if they are allowed process for collecting money honestly their due."

Again, in Kincade v. Cunningham, supra, HAND, J., says: "The law is reasonably progressive. There is no stronger evidence of this than the statutes of this commonwealth and the decisions of this court, on the subject of the rights and privileges of married women. . . . The law for many years abhorred its beneficent use as a source of contention between husband and wife, but it has found that sources of discord worse than an execution can creep in and mar the family harmony."

Legislation and judicial construction are in the direction of greater protection for the married woman in the enjoyment of her separate estate, and we cannot, as we are asked to in this case, wipe from our statute book a provision intended for her benefit and security.

It does not appear why Mrs. Knight kept her husband's note for so many years without entering it among the records of our court. It may be that she did not want to incumber his property by a judgment, or that she did not want to enforce her rights until after his death; or, it may be that her husband prevented her by entreaty or otherwise, and that the entry of the judgment would cause family discord. These surmises are

entirely speculative. We mention these possibilities simply to emphasize our conviction that she had a right to rely on the protection extended to her in the statute of limitations.

In accordance with this opinion we direct judgment to be entered in the case stated in favor of the plaintiff and against the defendant for the sum of one thousand dollars, with interest from January 11, 1884.

ARCHBALD, P. J., dissented.

*Error assigned* was in entering judgment for plaintiff.

*S. B. Price*, for appellant.—The statute of limitations is a bar to plaintiff's claim : Small v. Small, 129 Pa. 366 ; Rose v. Latshaw, 90 Pa. 238 ; Lahr's App., 90 Pa. 507 ; Kincade v. Cunningham, 118 Pa. 501 ; Thompson v. Carmichael, 122 Pa. 478 ; Yorks's App., 110 Pa. 69 ; Keyser's App., 124 Pa. 80.

*W. W. Lathrope*, *H. A. Knapp* with him, for appellee.—The plaintiff's claim is not barred by the statute of limitations . Etter v. Greenawalt, 98 Pa. 422 ; Lippincott v. Hopkins, 57 Pa. 328 ; Bovard v. Kettering, 101 Pa. 181 ; Spering v. Laughlin, 113 Pa. 209 ; Orr v. Bornstein, 124 Pa. 312 ; Dougherty v. Snyder, 15 S. & R. 90.

PER CURIAM, March 16, 1896 :

We find no error in this record. Upon the facts recited in the case stated, the plaintiff was entitled to judgment against the defendant for $1,000 with interest from January 11, 1884.

For reasons given in the opinion of the court below the judgment is affirmed.