## NATHAN N. POST, Admr. v. ROYAL B. KENERSON.

May Term, 1900.

Present: TAFT, C. J., ROWELL, TYLER, START, THOMPSON and WATSON, JJ.

Opinion filed August 6, 1900.

*Original book as independent evidence—Acceptance of drafts shown by book.*— An original book of accounts honestly kept in the regular course of business showing credits for commodities received and charges for drafts accepted is admissible as tending to show the acceptance of drafts as entered thereon.

*Mere form not material to the admissibility of book as independent evidence.*— The manner of keeping accounts and their purpose rather than their form is the important consideration in determining whether entries thereon, contemporaneous with the transactions they record, are entitled to admission as independent evidence.

GENERAL ASSUMPSIT brought by the plaintiff as administrator of O. A. Burton's estate to recover for butter sold and delivered by his decedent to the defendant. Pleas, the general issue, payment, accord and satisfaction, the statute of limitations and offset. Trial by court, Franklin County, March Term, 1899, *Munson* J., presiding. Judgment for the defendant on facts found. The plaintiff excepted.

The drafts of August 7 and August 31, referred to in the opinion, were not produced. There was evidence to show the accidental destruction of some of the papers of the plaintiff's decedent and some of the papers of the defendant. Neither party produced evidence from the books of any bank. Under the findings of the trial court the sole question was as to the admissibility of the defendant's book.

*Farrington & Post* for the plaintiff.

*Wilson & Hall* for the defendant.

TYLER, J. The court below found that the plaintiff's decedent owned a farm in Swanton from which butter was shipped to the defendant for sale on commission; that the defendant re-

ceived the butter charged in the last fourteen items of the plaintiff's specification, and was accountable for it at the prices carried out, which amounted to $698.97. The plaintiff claimed that $613.66 of this amount remained unpaid, while the defence was that payments had been made to more than cover the entire amount. The question was whether two certain drafts drawn by the decedent upon the defendant had been accepted by him. It had been the decedent's practice to draw upon the defendant, at thirty or sixty days, for round sums, generally even hundreds of dollars, on the strength of shipments about to be made. Such drafts were accepted by the defendant, and during the life of the acceptance butter was received and sold by him and accounts of sales were rendered by him to the decedent. If the drafts of August 7 and August 31, 1889, were in fact accepted by the defendant, then nothing was due from him to the decedent's estate, and this depended upon whether the defendant's books were admissible as independent evidence of the fact of such acceptance. The other party to the contract being dead they could not be used by the defendant as memoranda. The court finds in relation to these books :.

"Three books, introduced by the defendant, are submitted herewith, that their exact character may be ascertained by examination. They were the only books kept by the defendant. The entries were made in due course as the transactions occurred. They embrace credits for goods received and charges for drafts accepted. We have found nothing in our examination of them to indicate that they were not honestly kept, but they do not always contain the material necessary for the statement of a complete account, as is apparent from an examination of the Burton entries from the settlement of July 3rd, 1888, to the first credit now in controversy. Charges to balances are made and memoranda of settlement entered where the items included do not show a balance."

The books are memorandum books in form, rather than regular account books, though the pages are four inches wide by

eight long and ruled with money columns. On the fly leaf of each is written, " B. F. Kenerson's Butter Book," and they purport to contain memoranda of the defendant's butter transactions with various persons. The manner in which these memoranda were kept is illustrated by the following quotation:

| | | |
|---|---|---|
| " 3rd May. | | |
| "      O. A. Burton | Cr. | |
| " By 3 tubs butter | 35 | |
| " $61^2$–$9^2$, 62–$9^2$ | 83 | |
| " $61^2$–9 May 18 | | |
| " 185–$28^2$–157    18 | 25.61 | |
|    Dr. | | |
| " To acceptance | | |
| "    30 days    . | 200.00 " | |

The manner of keeping the accounts and their purpose, is the important consideration, rather than the form of the books themselves. An original entry may be made upon a diary, or a book or paper, and be entitled to be received as independent evidence. *Gleason & Field* v. *Kinney's Admr.*, 65 Vt. 560. If the books only contained memoranda of payments to Burton they would have been inadmissible, for the law will not permit a party to make a memorandum of a fact and introduce it as evidence of that fact when he is by statute denied the right to testify to it. *Paris* v. *Bellows' Estate*, 52 Vt. 351. Nor can mere private memoranda, without proof that they were made as original entries, become independent evidence. *Godding, Admr.* v. *Orcutt*, 44 Vt. 54; *Barber* v. *Bennett*, 58 Vt. 476. Such entries can only be referred to by a witness to refresh his recollection of what transpired, when they were made at that time of or soon after the transaction. *Barber* v. *Bennett*, 62 Vt. 50; *In Re Diggins' Estate*, 68 Vt. 198.

These books were the only ones kept by the defendant; the entries were honestly made and in the usual course of his business, and included credits for butter received and charges for

drafts accepted. They were properly received in evidence under V. S. 1239.

*Judgment affirmed.*