ROSA B. STOCKWELL v. THOMAS E. STOCKWELL'S ESTATE.

Special Term at Brattleboro, February, 1918.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed November 19, 1918.

*Husband and Wife—Wife's Separate Property—Presumption— Gift from Husband—Burden of Proof—Antenuptial Agreement—Husband as Trustee—Trusts—Accounting After Death of Trustee—Duty of Trustee—Records—Burden of Proof on Trustee—Cestui—Evidence—Book Accounts— Memoranda—Nature of Books and Entries—Diary—Documentary Evidence—Statute of Limitations as to Wife's Claim Against Husband.*

It will be presumed that a married woman holds personal property as her separate estate; and it is for him who asserts that such

property was acquired by her by gift from her husband to prove it.

An antenuptial arrangement whereby a husband took title to a timber lot to himself, and held it for his wife and agreed to lumber it for her benefit, created a trust relation between them.

In such case, where the trust was fully performed and ended in the husband's lifetime, except as to the matter of accounting, an action at law could be maintained by the *cestui* against his estate.

In such case, an agreement by the parties that the husband could use the money received from the sale of the lumber cut on the lot, for a short time, was not a waiver of an accounting, but merely a postponement thereof.

A trustee must keep proper books and records, and, upon being called to account, has the burden of making a proper accounting and proving the credits claimed; upon his failure to do so, all intendments are against him.

It is unnecessary for a *cestui* in his action for an accounting to show that there is anything his due.

Entries in books of any kind which are charges in book account are admissible in evidence as such, while entries which are memoranda, merely, are inadmissible. The manner and purpose of keeping the account, rather than the form of the books themselves, determine to which class the entries belong.

An entry, "Nov. 23 Loaned T. E. Stockwell without security $125.00," on a page headed "Memoranda" in the back part of a diary, suitable, if not intended, for debit and credit items, and where other loans were so charged in the same book, was a charge in book account, and admissible in evidence.

Entries appearing in a diary as a part of the day there recorded, with nothing to indicate that they were intended for anything more, are not book charges, but memoranda, and are inadmissible.

A wife's claim for money loaned to her husband, either before or after the marriage, does not outlaw as long as the marriage relation continues.

APPEAL from the decision of commissioners disallowing the the claim of Rosa A. Stockwell presented against the estate of Thomas E. Stockwell. Declaration, general assumpsit. Pleas, the general issue, payment, and the statute of limitations. Trial by court at the September Term, 1916, Windham County, *Slack,* J., presiding. Judgment for the plaintiff for a part of her claim. The plaintiff excepted. The opinion states the case.

*Harvey & Whitney* and *Hale K. Darling* for the plaintiff.

So far as the indebtedness from the decedent to the plaintiff before marriage is concerned, the marriage of the parties did not extinguish it, and she retained all her rights in respect of it, except the right to sue on it in her own name. G. L. 3521, 3524; *Spencer* v. *Stockwell,* 76 Vt. 176; *Wright* v. *Burroughs,* 61 Vt. 390.

As to the indebtedness which accrued after the marriage of the parties, it cannot be doubted that during the lifetime of Thomas E. Stockwell it constituted a valid claim in favor of the plaintiff, though perhaps enforceable only in equity. *Bullard* v. *Goodno,* 73 Vt. 88; *Hacket* v. *Moxley,* 65 Vt. 71; *Barron* v. *Barron,* 24 Vt. 375.

The commissioners on Mr. Stockwell's estate had jurisdiction to receive and adjudicate all claims which during his lifetime, because of the marriage relation, could not have been enforced directly by an action against him, brought by his wife. *Metcalf* v. *Metcalf's Est.,* 89 Vt. 63; *Downs' Admr.* v. *Downs' Exr.,* 75 Vt. 383; *Atkins' Est.* v. *Atkins' Est.,* 69 Vt. 270; *Spaulding* v. *Warner's Est.,* 52 Vt. 29; *Holdridge* v. *Holdridge's Est.,* 53 Vt. 546.

*W. R. Daley* and *W. D. Smith* for the defendant.

The court has not found that the deceased received any of the plaintiff's sole and separate estate, and the defendant contends that where the origin of the claimant's title is purely equitable, the probate court is without jurisdiction, and hence the county court on appeal is without jurisdiction. *Leonard* v. *Leonard,* 67 Vt. 318; *Re Parson's Est.,* 64 Vt. 193; *Hodges, Admr.* v. *Hodges' Est.,* 90 Vt. 214.

In the absence of any statute expressly providing otherwise, it is usually held that the payment or loan of money is not properly the subject of a book charge; that the person paying or loaning money has it in his power to perpetuate evidence of that fact by taking a receipt or note, and that hence there can be no necessity of his resorting to his books to prove the fact in question. *Reeve* v. *Whitemore,* 2 Drew and S. 446; *Parris* v. *Bellows,* 52 Vt. 351; *Miller* v. *French,* 1 Aik. 99; *Maine* v. *Harper,* 4 Allen (Mass.) 115.

A pass book upon which a party entered at the time memoranda of certain payments made by him upon a note which he owed is not admissible as independent evidence by itself to prove such payment.    But it may be referred to by such party, when a witness, for the purpose of refreshing his recollection of the fact. *Lapham* v. *Kelly,* 35 Vt. 195; *Barber* v. *Bennett,* 62 Vt. 50; *Bates* v. *Sabin,* 64 Vt. 511; *Hunter* v. *Kittredge's Est.,* 41 Vt. 359; *Pingree* v. *Johnson,* 69 Vt. 225; *Parris* v. *Bellows' Est.,* 52 Vt. 351; *Briggs* v. *Georgia,* 15 Vt. 61; *Burnham* v. *Adams,* 5 Vt. 313; *Jaquith Co.* v. *Shumway's Est.,* 80 Vt. 557.

POWERS, J.  The plaintiff appealed from the disallowance of her claim against the estate of her late husband, Thomas E. Stockwell.    The trial below was by the court, and resulted in a judgment disallowing all the items in the plaintiff's specifications, except the item of thirty-five dollars for a cow sold Stockwell.    The plaintiff excepted.    The specifications included twenty-eight items, of which only those hereinafter referred to are discussed in the plaintiff's brief.    All these items pertain to property held by Mrs. Stockwell as her separate estate.    As we shall see, a part of these are for money loaned, and it must be taken, the contrary not appearing, that this money was so held by her; for though G. L. 3524 (the statute defining the status of a married woman's personal property) expressly excepts personal property and rights of action acquired by her by gift from her husband, it is for him who asserts that the property in question comes within the exception to prove it.    The other items are for lumber and ties cut from the Barrows lot, so-called, under an antenuptial arrangement whereby Stockwell took the title to himself and held it for the claimant and agreed to lumber it for her benefit.    This arrangement created a trust relation between the parties; but, as will be seen, the trust was fully performed and ended in Stockwell's lifetime, except as to the matter of accounting.    In such circumstances, an action at law can be maintained by the *cestui.    Parker* v. *Parker,* 69 Vt. 352, 37 Atl. 1112.    In these circumstances shown by the record, the commissioners had full jurisdiction over all the items of the claim. *Metcalf* v. *Metcalf,* 89 Vt. 63, 94 Atl. 1.

Items 4, 5, 6, 12, 13 and 21.    These are all for cash loaned by the claimant to her husband, and depend for their proof upon

the admissibility of certain entries in the plaintiff's diaries. Of these entries it is found that they are in the handwriting of the plaintiff, that they were made at or about the time indicated therein, that they were made according to her usual manner of recording such transactions, and that they were her only books of account kept at that time. No other evidence to support these items was received.

The diary of 1899 was a small book in which one page was assigned to each day in the year. In the back of the book were several pages headed "Cash Account," which were ruled as such accounts usually are with columns headed "Received" and "Paid." Various appropriate entries appeared on these pages. Following these pages were a few pages headed "Memoranda," ruled into three columns, one on the left of the page for the date, and two at the right headed, respectively, "Dolls." and "Cts." On one of these pages were two entries of money lent to other persons, and in another was an entry as follows: "Nov. 23, Loaned T. E. Stockwell without security $125.00." This was item 4 on the specification. Item 21 was shown only by an entry in the diary of 1901. This, also, was a small book with one page assigned to each day, and with similar "Cash Account" and "Memoranda" sections in the back part. In the diary part of this book on the page assigned to April 3, 1901, appeared this entry: "Loaned Stockwell five dollars to pay Woods." All the other items of this group were shown only by entries found in the diary of 1900. This was a larger book with a page for each day, and at the back there was, in addition to a "Cash Account" and "Memoranda" section, a few ruled pages for "Bills Payable" and "Receivable." On the page of the diary part assigned to March 7, this entry appeared: "I made walnut cake Ligh (Stockwell) and I went to the Eastern Star meeting in Brattleboro afternoon and evening. I was sick in evening and had to leave the hall. I got a cashier's check cashed for $50 and lent the money to Stockwell. Saw Mary Shepardson in Drug Store." This entry may be taken as fairly showing the character of the entries regarding the remaining items of the group.

The law does not require any particular form of bookkeeping, or the use of any particular kind of a book. It is established by the former decisions of this Court that if these entries are memoranda, merely, they are inadmissible, for a man is not al-

lowed to provide evidence for himself by making an entry of that character. *Parris* v. *Bellows' Est.*, 52 Vt. 351; *Post* v. *Kenerson*, 72 Vt. 341, 47 Atl. 1072, 52 L. R. A. 552, 82 Am. St. Rep. 948. And it makes no difference that such entries are found in a daybook, journal, or ledger. *Gleason* v. *Kinney's Admr.*, 65 Vt. 560, 27 Atl. 208. On the other hand, if these entries are charges in book account, they are admissible (*Lapham* v. *Kelley*, 35 Vt. 195), and it is of no consequence that they are found in a diary (*Gleason* v. *Kinney's Admr.*, *supra*), or even on a slip of paper. *Bell* v. *McLeran*, 3 Vt. 185. In determining to which of these classes the entries belong, the nature of the transaction and entry is to control. It is the manner and purpose of keeping the account, rather than the form of the books themselves, that is the important consideration. *Post* v. *Kenerson, supra.*

Item 4 should be considered by itself. Here we have an entry, not in the diary part of the book, but in a part suitable, if not intended, for debt and credit items. The fact that the page is headed ''Memoranda'' is not controlling. The fact that this entry was made there instead of in the body of the diary, indicates that it was intended for something more than a note to help the memory (*Barber* v. *Bennett*, 58 Vt. 476, 4 Atl. 321, 56 Am. Rep. 565)—even a charge against the decedent. The loan was a proper matter of book charge (*Warden* v. *Johnson*, 11 Vt. 455; *Keeler* v. *Mathews*, 17 Vt. 125; *Plimpton* v. *Gleason*, 57 Vt. 604), and while the entry lacks the usual formalities of a book charge too much nicety should not be required in this respect. It was the plaintiff's way of keeping an account of the loan,—her way of charging it. This is shown by the other loans so charged on the same book. The honesty of the transaction is not questioned and the preliminary facts are found. This charge was admissible. The other entries regarding items of this group were not admissible. They are mere memoranda and not in any respect book charges. They appear in the diary itself as a part of the events of the day there recorded. There is nothing to indicate that they were intended for anything more, and they come within the general rule excluding diary entries. *Costello* v. *Crowell*, 139 Mass. 588, 2 N. E. 698; *Hutchins* v. *Berry*, 75 N. H. 416, 75 Atl. 650.

While the entry regarding item 21 was not mingled with other recited facts, it was nothing more than a memorandum and was equally inadmissible.

Items 25, 26, 27 and 28. These are the items for the lumber and ties from the Barrows lot. By the written agreement above referred to, it appears that the money used to buy this lot was the money of the plaintiff and that, as between her and Stockwell, the lot belonged to her. It was therein provided that Stockwell should lumber the lot and account to her for the proceeds. He cut the lumber and ties under this agreement and received therefor $1,013.02. At the time he received this money, he talked the matter over with the plaintiff, and it was agreed upon between them that he should use it and pay it to her later. No accounting appears to have been had at this time, and so far as shown he never informed the plaintiff of the net amount so received. It is found that the sum above named was the gross amount received by Stockwell, and that, in an accounting with the plaintiff, it ought to be reduced by the expense of the cutting and hauling; but it is further reported by the court that the evidence on this subject was so meagre and unsatisfactory that it was unable to find what the cutting and hauling amounted to. The items were disallowed.

As we have seen, the antenuptial arrangement created a trust. This relation of the parties was not affected by the agreement that Stockwell should use the money for a short time. The accounting between them was merely postponed; it was not waived. If, as the defendant here claims, this agreement did result in changing their relation into that of debtor and creditor, simply, the result would not be to exclude the jurisdiction of the commissioners, but might affect the question on which the rights of the parties depend, so far as these items are concerned. That question is: Where is the burden of proof? It is a rule very generally, if not universally adopted by the courts that, when a trustee is called to account, the burden is on him to make a proper accounting, and, on failure so to do, all intendments are against him. He must keep proper books and records. The law assumes that he knows all about the transactions involved and must reveal the true facts. 39 Cyc. 476; 2 Perry, Trusts, § 821; 3 Pom. Eq. 1063. If he claims credits, he must prove them. *Choctaw, etc., R. R. Co.* v. *Sittel,* 21 Okla. 695, 97 Pac. 363. It is not necessary for the *cestui* to show that there is anything his due. *Frethey* v. *Durant,* 24 App. Div. 58, 48 N. Y. Supp. 839.

This rule accords with our own in kindred matters. See *Farwell* v. *Steen,* 46 Vt. 678; *Spaulding* v. *Wakefield's Est.,* 53 Vt. 660, 38 Am. Rep. 709; *McCloskey* v. *Gleason,* 56 Vt. 765; and *Rich, Admr.* v. *Austin,* 40 Vt. 416, 433. The failure in the proof, then, was that of the estate, and the items should have been allowed.

The statute of limitations was pleaded and is relied upon, but it will not defeat the plaintiff's claim. While there is some disagreement in the books, the rule of the best reasoned cases is that money lent by a woman to her husband does not outlaw as long as the marital relation continues. This results from the unity of husband and wife, and notwithstanding the modern statutes regarding married women's property rights, she cannot sue her husband, and the rule remains the same. Public policy still forbids that the parties shall be vexed by pressing claims against each other, and these are not in danger of outlawing during coverture. Angell, Lim. § 60; *Metlas* v. *Williams,* 86 N. J. Eq. 330, 97 Atl. 961; *Morrison* v. *Brown,* 84 Me. 82, 24 Atl. 672; *Barnett* v. *Harsbarger,* 105 Ind. 410, 5 N. E. 718; *Dice* v. *Irwin,* 110 Ind. 561, 11 N. E. 488; *Parrett* v. *Palmer,* 8 Ind. App. 356, 35 N. E. 713, 52 Am. St. Rep. 479; *Kennedy* v. *Knight,* 174 Pa. 408, 34 Atl. 585; *Gillan* v. *West,* 232 Pa. 74, 81 Atl. 128. And it makes no difference if the transaction took place before the marriage. *Fourthman* v. *Fourthman,* 15 Ind. App. 199, 43 N. E. 965; *Second Nat. Bank* v. *Merrill,* 81 Wis. 142, 50 N. W. 503, 29 Am. St. Rep. 877.

*Judgment reversed and cause remanded.*