## Smith v. Smith.

*Herbert F. Laub*, for plaintiff.

*Frank P. McCluskey* and *Bachman & Flitter*, for defendant.

STEWART, P. J., Feb. 10, 1930.—This is a demurrer to plaintiff's statement. The statement alleged that on Nov. 21, 1924, the plaintiff and defendant were husband and wife; that on said day the defendant committed a violent assault and battery on the plaintiff, so that she was severely injured and suffered a permanent disability; that, subsequently, to wit, on Jan. 18, 1926, plaintiff was divorced from defendant on account of his cruel and barbarous treatment and the personal indignities he had committed against her.

The defendant filed a demurrer. The first cause is as follows: "The plaintiff's statement does not disclose any claim against the defendant upon which a judgment could legally be rendered against the defendant in favor of the

plaintiff." The second cause is as follows: "The plaintiff has no legal right to maintain the above action." The fourth cause is as follows: "That under the law of the Commonwealth of Pennsylvania husband and wife cannot sue each other in an action of trespass for anything said, done or committed during coverture."

The questions raised do not seem to have been decided by either the Supreme or the Superior Court of this state, but they have been discussed at great length by the supreme courts of almost every other state, and decisions either one way or the other are to be found even as late as the last volume of the Decennial Digest. The best considered opinions show that the decision rests very largely on the wording of the statutes relating to the right of a wife to sue her husband in the different states. We must look at the Pennsylvania statutes. The following acts bear on the subject: The Act of June 8, 1893, § 3, P. L. 344, is as follows: "Hereafter a married woman may sue and be sued civilly in all respects and in any form of action and with the same effect and results and consequences as an unmarried person, but she may not sue her husband, except in a proceeding for divorce, or in a proceeding to protect or recover her separate property whensoever he may have deserted or separated himself from her without sufficient cause, or may have neglected or refused to support her, nor may he sue her, except in a proceeding for divorce or in a proceeding to protect or recover his separate property whensoever she may have deserted him, or separated herself from him without sufficient cause, nor may she be arrested or imprisoned for her torts."

The Act of March 27, 1913, § 1, P. L. 14, is as follows: "Hereafter, a married woman may sue and be sued civilly in all respects and in any form of action and with the same effect and results and consequences, as an unmarried person, but she may not sue her husband except in proceedings for divorce or in proceedings to protect and recover her separate property; nor may he sue her except in proceedings for divorce or in proceedings to protect or recover his separate property; nor may she be arrested or imprisoned for her torts."

The Act of May 1, 1913, § 1, P. L. 146, is as follows: "Be it enacted, etc., that from and after the passage of this act, any wife who has been deserted, abandoned or driven from her home by her husband, may sue her husband civilly, in any court of this commonwealth having jurisdiction, upon any cause of action now existing or hereafter accruing, with like effect as if such wife were a *feme sole;* and in such case, the wife shall be a competent witness against her husband; provided, however, that nothing in this act contained shall be deemed to destroy the right of survivorship in any land heretofore or hereafter conveyed to such wife and husband jointly."

We are not without light as to the way these statutes should be interpreted. In Ritter *v.* Ritter, 31 Pa. 396, the syllabus is: "A married woman cannot, by her next friend, maintain an action of debt against her husband on a contract made during coverture. Such action is not authorized by the Act of April 11, 1848, P. L. 536,or any of its supplements." Mr. Justice Woodward, in passing on the Married Woman's Act of April 11, 1848, said, on page 398: "It is doubtless competent for the legislative power to change and modify the qualities of the marriage relation, perhaps to abolish it altogether; but if the history of the human race teaches any lesson whatever, it is that concubinage is the alternative of marriage. In just so far as you impair the one, you encourage the other. In just so far as you sever the material interests of husband and wife, you destroy the sympathies which constitute the oneness of the relation and degrade the divine institution to mere concubinage. Nothing could so complete that severance and degradation as to throw open litigation to the

parties. The maddest advocate for woman's rights and for the abolition on earth of all divine institutions could wish for no more decisive blow from the courts than this. The flames which litigation would kindle on the domestic hearth would consume in an instant the conjugal bond and bring on a new era indeed—an era of universal discord, of unchastity, of bastardy, of dissoluteness, of violence, cruelty and murders. But will the courts expose this fundamental relation to the consequences of unbridled litigation? Never. If it is to be done, it must be by the legislature, and then by no indirection or inferential consequence, but by direct, plain, unmistakable English. We are asked to deduce the legislative intention to confer a right of action from the provisions of our several acts of assembly; but it is a sufficient answer that no one of those acts expresses that intention. If the legislature meant that such actions as the present should be sustained, they had command of a very copious language in which to express their will. They have not 'done it, and, until they do, we will not infer it. When it is done, the consequences must rest with those who do it." In Small v. Small, 129 Pa. 366, the syllabus is: "A single sentence, even though it form a separate section of a statute, is not to be construed apart from the context or without regard to its subject-matter and the general purpose sought to be accomplished. The Married Persons' Property Act of June 3, 1887, P. L. 332, does not authorize a wife to sue her husband directly and in her own name for the recovery of money received by him from her separate estate. The language of section 4 of the said act, taken by itself, is broad enough to include an action by one directly against the other, but the act as a whole cannot be construed as authorizing such an action. So great a change in the policy of the law, upon a subject such as the marriage relation, should not rest on inference or implication from general words, but should appear by the explicit and unquestionable mandate of the legislature." Mr. Justice Mitchell said, on page 373: "If we look not only at the general intent of the act, but more closely at the language used, we are led to the same result. The purpose is not only expressed broadly in apt language once, but is repeated and reiterated with superabundant caution. In this varied and detailed consideration, it is impossible to suppose that so important a branch of the subject as the right of action between husband and wife should not have been thought of, or, being thought of, should not have been granted in unequivocal terms, if intended to be granted at all. To legislators, versed in the principles of the common law, it would immediately suggest itself as a distinct and momentous departure from the legal policy of centuries, which ordinary phraseology, however general, would not commonly be understood to intend, and it is inconceivable that, under such circumstances, it should be granted obscurely and by implication." See, also, Haun v. Trainer, 190 Pa. 1. To the same effect is Bandfield v. Bandfield, 117 Mich. 80, 40 L. R. A. 757. Mr. Chief Justice Grant delivered the opinion. He quotes from 9 Bacon, Abr. title "Statutes" 1, page 245, as follows: "In all doubtful matters, and where the expression is in general terms, statutes are to receive such a construction as may be agreeable to the rules of the common law in cases of that nature; for statutes are not presumed to make any alteration in the common law farther, or otherwise, than the act expressly declares; therefore, in all general matters, the law presumes the act did not intend to make any alteration: for if the Parliament had that design, they would have expressed it in the act." In Thompson v. Thompson, 218 U. S. 611, an action was brought by a wife against her husband to recover damages for an assault and battery. She based her action upon the code of the District of Columbia. Mr. Justice Day, in discussing the proper interpretation of that code, said: "It must be pre-

sumed that the legislators who enacted this statute were familiar with the long-established policy of the common law and were not unmindful of the radical changes in the policy of centuries which such legislation as is here suggested would bring about. Conceding it to be within the power of the legislature to make this alteration in the law, if it saw fit to do so, nevertheless, such radical and far-reaching changes should only be wrought by language so clear and plain as to be unmistakable evidence of the legislative intention. Had it been the legislative purpose not only to permit the wife to bring suits free from her husband's participation and control, but to bring actions against him also for injuries to person or property as though they were strangers, thus emphasizing and publishing differences which otherwise might not be serious, it would have been easy to have expressed that intent in terms of irresistible clearness." It is, therefore, apparent that we must have in mind that at the common law no such suit as the present one could be brought, and that the burden is on the plaintiff to show that the legislature intended, by plain language, to change that law and to confer the right to sue her husband for a tort committed upon her while they were living together. We have referred above to the multiplicity of authority upon this subject. A leading case seems to be Abbott v. Abbott, 67 Maine, 304, 24 Am. Rep. 27. The syllabus is: "A wife cannot, after being divorced from her husband, maintain an action against him for an assault committed upon her during coverture; nor against persons who assisted him in making the assault." Mr. Justice Peters said: "Precisely the same question was lately before the English court and the decision and the reasons on which the decision is grounded meet with our unqualified approval: Phillips v. Barnet, 1 Q. B. D. 436. It is there held that a wife, after being divorced from her husband, cannot sue him for an assault committed upon her during coverture. In the course of the discussion in that case, Lush, J., says: 'Now, I cannot for a moment think that a divorce makes a marriage) void ab initio; it merely terminates the relation of husband and wife from the time of the divorce, and their future rights, with regard to property, are adjusted according to the decision of the court in each case;' Field, J., says: 'I now think it clear that the real substantial ground why the wife cannot sue her husband is not merely a difficulty in the procedure, but the general principle of the common law that husband and wife are one person;' and Blackburn, J., states the objection to be 'not the technical one of parties, but because, being one person, one cannot sue the other.' The theory upon which the present action is sought to be maintained is, that coverture merely suspends and does not destroy the remedy of the wife against her husband. But the error in the proposition is the supposition that a cause of action, or a right of action, ever exists in such a case. There is not only no civil remedy, but there is no civil right during coverture to be redressed at any time. There is, therefore, nothing to be suspended. Divorce cannot make that a cause of action which was not a cause of action before divorce. The legal character of an act of violence by husband upon wife, and of the consequences that flow from it, is fixed by the condition of the parties at the time the act is done. If there be no cause of action at the time, there never can be any." The same doctrine was held in Libby v. Berry, 74 Maine, 286, 43 Am. Rep. 589. The syllabus is: "A divorced woman, who had been compelled by her husband to submit to an attempt by a third person to produce a miscarriage, cannot maintain an action against the third person therefor." In Strom v. Strom, 98 Minn. 427, 107 N. W. Repr. 1047, the syllabus is: "A married woman cannot, either before or after a divorce, maintain a civil action against her husband for a personal tort committed by him against her during coverture." To

these authorities may be added a late discussion by the Supreme Court of Virginia in Keister's Admin'r v. Keister's Exec'rs, 96 S. E. Repr. 315, which contains an interpretation of the word "unmarried" in the Virginia statute. The court construed the word to mean not having a husband at the time the cause of action arose. Contrary views are well expressed in the exhaustive opinion of Mr. Justice Pound in Allen v. Allen, 246 N. Y. 571, and in the opinion of Mr. Chief Justice Clark in Crowell v. Crowell, 105 S. E. Repr. 206. The well considered dissenting opinion of Justices Walker and Hoke, however, must appeal more strongly to the legal profession than that of the majority. In Pennsylvania the general subject was discussed by President Judge Pearson in Miller v. Miller, 44 Pa. 170. The syllabus is: "An action of covenant by a wife, in the name of her next friend, against her husband, to recover damages for permitting waste and destruction of real estate which had been conveyed by her, without the intervention of a trustee, to him for life, by an antenuptial contract, is not within the 3rd section of the Act of April 11, 1856, although the husband had previously separated himself from his wife before suit brought. Unliquidated damages for breach of covenant are not 'property' within the meaning of the act of assembly." Judge Pearson said: "Is this a suit to recover her property? That she has an interest in the land as a reversion is very clear; but is the unliquidated damages arising from permissive waste the kind of property referred to in the act of assembly? As we conceive, the statute was intended to enable her to sue for the recovery of her earnings and also for her effects, if carried off, either by her husband or others. She might have such a property in a bond or promissory note as would enable her to maintain an action; but unliquidated damages are not 'property,' either in common parlance or technical language. If the legislature had intended to give the wife a general power to sue as a *feme sole*, it would have said so. It can scarcely be pretended that she could recover damages from her husband on account of a battery to her person, under the provisions of this act, or that she could sue him for stoning her house or diverting a watercourse on her farm. The legislature has undertaken to enumerate the cases in which she may sue, and all others are omitted; *expressio unius exclusio est alterius* is a sound legal maxim." The case was affirmed on his opinion. In Johnston v. Johnston, 7 Dist. R. 555, the whole scope of the Act of 1893 was discussed by President Judge Endlich from the point of view of a bill in equity to recover on a debt. It was also discussed by the late President Judge Albright in Mink v. Mink, 16 Pa. C. C. Reps. 189. That opinion was filed April 1, 1895, and discusses the meaning of the Act of 1893, *supra*. There the wife and husband were separated, not divorced. She charged that her husband had accused her of having committed adultery with various persons. The husband demurred to the complaint on the ground that his wife could not bring suit against him under the Act of 1893, and the court sustained the demurrer. In Smith v. Smith, 67 Pitts. L. J. 599, the consideration concerned the Act of 1893 and also the Acts of 1913. The syllabus is: "The intention of the legislature in passing the Married Women's Acts of 1893 and 1913 was not to change the law governing the relations of husband and wife as between themselves, except as might be necessary for the protection of her separate property, so that a wife injured while riding in her husband's automobile cannot maintain an action against him for personal injuries, and judgment entered on statutory demurrer." Judge Ford said: "The term 'property' has been defined as the interest one can have in external things. 'The separate property of a married woman is that which belongs to her over which her husband has no equity, and may consist of lands or chattels:' Fire-

men's Ins. Co. v. Bay, 4 Barb. (N. Y.) 407. In a number, perhaps in all, of the states statutes enlarging or conferring additional rights upon married women have been adopted. The statutes enlarge their powers over property and give remedies for its protection. In considering and in giving effect to the word 'property,' the courts are divided, but generally agree that the various enactments will not give a wife the right to sue her husband for a personal tort by implication, but this right must be expressly conferred: Strom v. Strom, 116 Am. S. R. 387. The term 'property' does not include a right of action in tort: Gibson v. Gibson, 43 Wis. 23. In Heyman v. Heyman, 19 Ga. App. 634, a wife entered an action against her husband to recover damages caused by the negligence of her husband, and it was held that the statute enlarging her rights did not confer the right to sue her husband for a tort. The rule, as stated in 21 Cyc. 1519, is that 'neither under the rules which obtained at common law nor generally under the provisions of the various statutes can the wife maintain an action against her husband for his torts to her person or character. To the same effect is Schultz v. Schultz, 89 N. Y. 644; Main v. Main, 46 Ill. App. 106. Citing Peters v. Peters, 42 Iowa, 182, and other cases." In McKinnon v. McKinnon, 70 Pitts. L. J. 619, also decided by Judge Ford, the syllabus is: "Under the Act of May 1, 1913, P. L. 146, a wife, deserted, abandoned or driven from her home by her husband, may sue her husband civilly in any court of competent jurisdiction upon any cause of action as if she was a *feme sole*." That case, however, was a bill in equity under the above act, and while the syllabus is so broad, Judge Ford was careful to say in his opinion: "Plaintiff is not seeking to enforce a property or contractual right." In Paskevich v. Paskevich, 5 Northumb. L. J. 266, the syllabus is: "A wife can sustain an action for damages against her husband for personal injuries inflicted upon her during coverture, where, immediately upon the inflicting of the injuries complained of, the wife withdrew from the habitation of the husband." That case was one where the wife immediately withdrew from the habitation of her husband. If she had not done so, the opinion would have been the other way, for President Judge Cummings said: "Prior to the Act of May 1, 1913, P. L. 146, a wife could not sustain an action for damages against her husband for personal injuries to her committed by her husband. Even since the passage of the act above referred to, we do not believe that a wife can sustain such action against her husband for personal injuries inflicted by the husband while they were living together." In Cardamone v. Cardamone, 9 D. & C. 723, where a man injured a woman by the negligent operation of his automobile, and she sued him, and afterwards the man married the woman, but the suit went on, and the wife recovered a judgment against her husband, the court stayed the execution. In the opinion filed there is an exhaustive review of all the authorities, although in that case the cause of action did not arise during the marriage but before it.

It must be borne in mind that the present case is for unliquidated damages and not for recovery of property. Cases like Kennedy v. Knight, 174 Pa. 408, and Gillan v. West, 232 Pa. 74, have no application, and it also must be borne in mind that this is a suit at law and not in equity. In Heckman v. Heckman, 215 Pa. 203, Mr. Justice Mestrezat points out the distinction between actions at law and proceedings in equity, and he shows that equity has permitted a married woman in Pennsylvania to protect her separate estate and enforce her property rights in a suit against her husband. See, also, Dorsett v. Dorsett, 226 Pa. 334; Ireland v. Ireland, 244 Pa. 489; Schomaker v. Schomaker, 247 Pa. 444, and Morrish v. Morrish, 262 Pa. 192. It is not necessary to consider whether the statement is or is not defective. It sets out a cause of

action which accrued on Nov. 21, 1924, when they were living together, and she could not have brought suit at that time, nor can she bring suit after her divorce on Jan. 18, 1926.

And now, Feb. 10, 1930, this cause came on to be heard upon defendant's demurrer, and the causes of demurrer above set out are sustained, and judgment is directed to be entered in favor of the defendant.

From Henry D. Maxwell, Easton, Pa.